MOUNT HOLLY SAFE DEPOSIT AND TRUST COMPANY and JOHN
    P. LIPPINCOTT, administrators with will annexed of Sarah
    H. Woolston, deceased,

*v.*

BENJAMIN H. DEACON et ux., et al.

ANNIE H. D. LIPPINCOTT et vir.

*v.*

BENJAMIN H. DEACON et ux., et al.

[Submitted September 22d, 1911.   Decided October 3d, 1911.]

Testatrix, after making bequests, gave the remainder of her estate to
her sister B., and then provided that if B. predeceased her, half of all
"moneys" belonging to her estate should be paid to a society, and the
other half should be divided among certain persons, who included all who
would have taken under the intestacy laws.—*Held*, that the word
"moneys" was used in the sense of property, of whatever nature, without
which meaning there would be a partial intestacy.

On bill, &c.

The will of Sarah H. Woolston, dated September 29th, 1879,
provided as follows:

"Know all men by these presents, that I, Sarah H. Woolston, of the
city of Trenton, in the county of Mercer and State of New Jersey, mis-
sionary to the Chinese at Foochow, China, considering the uncertainty
of this mortal life, and being of sound mind and memory, do make and
publish this my last will and testament in manner and form following:

"*First.* I do hereby constitute and appoint my youngest sister, Beulah
Woolston, to be sole executrix of this my last will and testament, pro-
viding she is in the United States of America at the time of my decease,
but if my said sister, Beulah Woolston, is not in the United States of
America at that time, then I do constitute and appoint Wilson Stokes
of Medford, in the county of Burlington, and State of New Jersey, to be

the executor of this my last will and testament, directing my said executor to pay all my just debts, and the bequests hereinafter named, out of my estate.

"*Second.* I give and bequeath to my sister Rebecca Ann H. Deacon, to her and her heirs, the sum of one hundred dollars.

"*Third.* I give and bequeath to my sister Beulah Woolston, the sum of one hundred dollars.

"*Fourth.* I give and bequeath to each one of the ten children of my deceased sister Caroline B. Chew, to them and their heirs, the sum of twenty-five dollars. The shares of the younger children to remain in the hands of my executrix or executor until each one comes to the age of twenty-one years when it shall be paid to him with interest from the time of my decease.

"*Fifth.* As to all the rest, residue and remainder of my estate and effects, real and personal, of what kind and nature soever, I give and bequeath the same to my said sister Beulah Woolston to be for her sole use.

"*Sixth.* But if my sister, the said Beulah Woolston, should not be my survivor, then I will and direct that one-half of all moneys belonging to my estate shall be paid to the American Bible Society to be used in printing the Holy Bible in the Chinese language.

"*Seventh.* And I will and direct that the other half of all moneys belonging to my estate shall be divided into twelve equal parts, two of these parts shall be given to my sister Rebecca Ann H. Deacon, to her and her heirs, and the other ten parts shall be given to the ten children, to them and their heirs, of my deceased sister Caroline B. Chew. And I do further will and direct that the shares of such of these children as are minors shall remain in the hands of my executor until each one is twenty-one years of age when it shall be paid to him with interest from the time of my decease. And I do especially direct that my executor shall see that each one of these children receives his and her full part without any diminution whatever.

"*Eighth.* In case the father, Ezekiel Cooper Chew, of the ten children of my deceased sister Caroline B. Chew, under any pretences whatsover, claim any part or portion of the share or shares of any one or more of these children, then I do will and direct that they receive only twenty-five dollars each, and the remainder of these ten shares shall be given to the American Bible Society to be used in printing the Holy Scriptures in the Chinese language.

"In testimony whereof, I hereunto set my hand and seal, and publish and declare this to be my last will and testament in the presence of the witnesses named below, this twenty-ninth day of September, in the year of our Lord one thousand eight hundred and seventy-nine.

"SARAH H. WOOLSTON, (Seal).

"Signed, published and declared by the said Sarah H. Woolston to be her last will and testament in the presence of us who were present at the same time and subscribed our names as witnesses in the presence of the testatrix.

"WILLIAM HALL, Trenton, N. J.

"EUGENE EMLEY, Trenton, N. J."

Testatrix died June 11th, 1910. At the date of her death she owned a small amount of real estate and owned personal estate of the value of about twelve thousand dollars. The personal estate consisted of mortgages, bank stock and railway stock, except as to certain household goods in value about three hundred dollars, and cash in hand and in bank in amount $378.03.

Beulah, the sister of testatrix, died, unmarried, prior to the decease of testatrix; Rebecca, sister of testatrix, died prior to the decease of testatrix, leaving two children. At the date of the decease of testatrix all of the ten children of Caroline B. Chew were alive save one, who died before testatrix, leaving nine children.

*Mr. Samuel A. Atkinson,* for Mount Holly Safe Deposit and Trust Company and John P. Lippincott, administrators, &c.

*Mr. Charles Ewan Merritt,* for the Farmers' National Bank of New Jersey, at Mount Holly.

*Mr. Richard B. Eckman,* for Benjamin W. Zelley.

*Mr. George M. Hillman,* for Annie H. D. Lippincott.

*Mr. William P. Martin,* for the American Bible Society.

LEAMING, V. C.

The controversy in these two suits, which have been heard together, is determined by the ascertainment of the intention of testatrix in the use of the expression "one-half of all moneys belonging to my estate."

A great number and variety of adjudicated cases are reported in which courts have been called upon to define the meaning of the term "moneys" as used in wills. An extended review of these cases seems unnecessary. It will be found that the word may be appropriately used to mean cash only, it may also be used as the equivalent of personal estate, and it may also be used as the equivalent of property and thus include real and personal property. In the ascertainment of the intention of a testator in the

use of a word of this degree of flexibility in its popular meaning, the context of the will is of peculiar force; if it clearly appears from the context that testator used the word in either of the meanings above suggested, that meaning must be adopted.

At the date of the execution of the will here in question, testatrix had a spinster sister named Beulah, who was engaged in missionary work among the Chinese, in which work testatrix had also been engaged for a number of years. Another sister of testatrix, named Rebecca, was then alive and married; another sister, named Caroline, was deceased, and had left ten children. After making bequests to Beulah, Rebecca and each of the ten children of the deceased sister Caroline, testatrix gives the remainder of her estate to her sister Beulah. She then provides that if her sister Beulah should not survive her that "one-half of all moneys belonging to my estate shall be paid to the American Bible Society, to be used in printing the Holy Bible in the Chinese language," and that

"the other half of all moneys belonging to my estate shall be divided into twelve equal parts, two of these parts shall be given to my sister Rebecca Ann H. Deacon, to her and her heirs, and the other ten parts shall be given to the ten children, to them and their heirs, of my deceased sister Caroline B. Chew."

It will be observed that if testatrix used the word "moneys" in the restricted sense of cash, she necessarily intended to die intestate as to the remaining part of her estate. The presumption is against such an intent. In *Leigh* v. *Savidge, 14 N. J. Eq. (1 McCart.) 124, 134,* it is said: "A will ought not to be so construed as to produce such intestacy. The natural and reasonable presumption is, that when a will is executed the testator designs to dispose of his entire estate, and does not intend to die intestate as to any part of his property." This presumption against partial intestacy is greatly strengthened in this case by the fact that the persons to whom the "other half" was given included all of the persons who would have taken under the intestacy laws of this state. Under these conditions, it seems reasonably certain that it was not the intention of testatrix, in the event of the death of Beulah, prior to the death of testatrix, to leave to the

persons named all of such cash as testatrix might possess at her decease, other than that disposed of by the prior provisions of the will, and to die intestate as to the remaining part of her property, and in that manner have the very same persons to whom the cash was given take the remaining portion of her estate under the intestacy laws; such a purpose is so far inconsistent with the purpose which would naturally exist in the mind of one similarly circumstanced that its existence cannot be easily assumed. In this view I think it reasonably certain that the sixth and seventh items of the will were intended by testatrix as a continuation of the fifth item, dealing with the residue of her estate, with the added contingency of the predecease of Beulah, and that the word "moneys," as used by testatrix, was intended by her as the equivalent of property, and was intended to include all property belonging to her at the date of her decease.

I will advise a decree in accordance with the views herein expressed.